**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DERRICK ALDRIDGE,

Plaintiff,

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 1:14-cv-239

Beckwith, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Derrick Aldridge filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. For the reasons explained below, I conclude that this case should be AFFIRMED because the finding of non-disability is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In July 2010, Plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging a disability onset date of May 31, 2005 due to physical and mental impairments. (Tr. 255). Plaintiff's date last insured is December 31, 2010. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On June 27, 2012 an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 40-95). At the hearing, the ALJ heard testimony from Plaintiff and William Braunig, an impartial vocational expert. On October

18, 2012, ALJ Amelia G. Lombardo denied Plaintiff's application in a written decision. (Tr. 10-24).

The record on which the ALJ's decision was based reflects that Plaintiff was 48 years old on his date last insured, December 31, 2010. (Tr. 22, 44). Plaintiff has a high school education and past relevant work as a meat cutter. (Tr. 22, 45). In 2005, Plaintiff was injured at work. He now alleges disability based primarily on back impairments.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "lumbar degenerative disc disease and residual effect of lumbar fusion; obesity, carpal tunnel syndrome; depression; and anxiety." (Tr. 12). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform the full range of sedentary work, with the following limitations:

> The ability to use a cane for ambulation; occasional stooping, crouching, kneeling, and crawling; frequent fingering and handling; unskilled work as defined by the Dictionary of Occupational Titles; and low stress work, defined as no assembly line production quotas and not fast paced.

(Tr. 15).

Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that while Plaintiff could not perform his past relevant work, other jobs existed in significant numbers Plaintiff could perform, including such jobs as final assembler, microfilm document preparer and dowel inspector. (Tr. 23). Accordingly, the ALJ determined that

Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. (Tr. 29).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff maintains that the ALJ erred by: 1) failing to find that Plaintiff's impairments met or equaled the requirements for Listing 1.04A; and 2) failing to find that Plaintiff's cubital tunnel syndrome was a severe impairment. Upon careful review, the undersigned finds that Plaintiff's assignments of error are not well-taken.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

**B. Specific Errors**

*1. Listing 1.04A*

Plaintiff's first assignment of error asserts that the ALJ erred in finding that Plaintiff did not meet or equal Listing 1.04. Plaintiff also argues that the ALJ failed to consider the effect of his obesity on her Listings determination. Plaintiff's contentions are unavailing.

The third step in the sequential evaluation for disability benefits requires a determination of whether an impairment or a combination of impairments meets or equals one or more of the medical conditions listed in Appendix 1. *See* 20 C.F.R. §§ 416.920, 416.925, 416.926. An impairment meets a listed impairment only when it manifests the specific findings described in the set of medical criteria for that particular listed impairment. 20 C.F.R. § 416.925(d). Medical equivalence must be based on medical findings supported by medically acceptable clinical and laboratory techniques. 20 C.F.R. § 416.926(b). It is a claimant's burden at the third step of the evaluation process to provide evidence that she meets or equals a listed impairment. *Evans v. Sec'y of Health & Human Servs*., 820 F.2d 161, 164 (6th Cir.1987).

If a claimant suffers from an impairment which meets or equals a listed impairment, the claimant is disabled without consideration of the claimant's age, education, and work experience. *See Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524, 528 (6th Cir.1981). An impairment, or combination of impairments, will be deemed medically equivalent to a listed impairment if the symptoms, signs, and laboratory findings, as shown in the medical evidence, are at least equal in severity and duration as

to the listed impairment. *Land v. Sec'y of Health & Human Servs*., 814 F.2d 241, 245 (6th Cir.1986).

It is well-settled that to "meet" a listing, a claimant's impairments must satisfy each and every element of the listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin*., 118 F. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing."). An ALJ must compare the available medical evidence with the requirements for listed impairments to determine whether a claimant's condition is equivalent to a listing. *Reynolds v. Comm'r of Soc. Sec*., No. 09–2060, 2011 WL 1228165, at *2 (6th Cir. Apr.1, 2011).

Here, the ALJ determined that Plaintiff's impairments, singly or in combination, did not meet or equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 14-15). In this regard, the ALJ's decision states the following:

> The undersigned carefully considered Listing section 1.04 (disorders of the spine). However, although the early MRI reports show some nerve root contact, there was no evidence of nerve root compression. Early records also show a chronic left radiculopathy, and the Plaintiff said that he used a cane for ambulation, but the record does not show the inability to ambulate effective as defined by section 1.00. Specifically, there is no evidence that the claimant's use of the cane has limited the functioning of both upper extremities as required by section 1.00(B)(2)(b)(1).

(Tr. 13).

Plaintiff argues that the evidence of record establishes that his cervical spondylosis meets or medically equals section 1.04(A). Listing 1.04 provides:

> *Disorders of the* spine ... resulting in compromise of a nerve root .... [w]ith [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App'x 1, 1.04. Thus, for Plaintiff to have been found disabled at step three, he must have had (1) a spinal disorder that (2) result[ed] in "compromise of a nerve root" with (3) "neuro-anatomic distribution of pain," (4) "limitation of motion of the spine," and (5) motor loss (muscle weakness) accompanied by (6) sensory or reflex loss. *Id.*

Plaintiff argues that the evidence shows more than 'some nerve root contact'; rather, there is diagnostic testing proving "nerve root compression" as well evidence of nerve root compression through his distribution of pain, limitation of motion, motor loss accompanied by sensory or reflex loss, and positive straight leg raising. Plaintiff cites to multiple diagnostic tests which have confirmed compression of the nerve roots. Namely, a MRI in 2004 which showed a disc protrusion which abutted and slightly displaced the descending S1 nerve root. (Tr. 430, 431). EMG results from April 6, 2005 suggested a mild, acute left L5 radiculopathy. (Tr. 813). On August 15, 2005, Dr. Dixon felt Plaintiff had left nerve root deflection. (Tr. 529). On February 6, 2007, Plaintiff had lumbar spinal surgery consisting of a decompression and fusion. (Tr. 755). On December 5, 2007 another EMG showed chronic and acute abnormalities affecting the L4-S2 nerve roots

and neuromuscular pathways bilaterally with diminished motor, sensory, and H-reflex functions suggesting radiculopathy to the lower extremities. (Tr. 734-736, 1082-1088). On February 13, 2009 a new MRI showed a shallow left subarticular spondylotic protrusion near to left S1 nerve root narrowing left lateral recess. (Tr. 841). On March 31, 2009 Dr. Dixon performed a second lumbar spine surgery and found the L5 left demonstrated mild root irritability with dissection. (Tr. 474, 475). Another MRI on January 26, 2012 showed disc displacement with abutment of the bilateral exiting L5 nerves. (Tr. 1016-1020). An EMG on February 9, 2012 showed evidence of chronic bilateral lumbosacral radiculopathies. (Tr. 1012-1015). Plaintiff further asserts that his subjective complaints have consistently shown a neuro-anatomic distribution of pain consisting of radicular complaints into the lower extremities. (Tr. 723, 802, 810, 815, 817, 818, 823, 825, 827).

Such evidence, however, fails to establish that Plaintiff's impairments met or equaled all of the required elements of Listing 1.04(A). As noted above, the ALJ concluded that Plaintiff's impairments did not meet or medically equal Listing 1.04, because the record failed to document compromise of the nerve root. (Tr. 24). As noted by the Commissioner, none of the testing cited by Plaintiff show the type of nerve root compression that is required by the listing. Notably, listing 1.04(A) requires the claimant to show evidence of "nerve root compression (including the cauda equina) or the spinal cord." 20 C.F.R. pt. 404, subpt. P, app. 1§1.04(A). Plaintiff has not identified any evidence to show that he had this type of nerve root compression (i.e., of the cauda equina or spinal cord); therefore, it was reasonable for the ALJ to note that the early

magnetic resonance imaging (MRI) reports showed some nerve root contact, but no evidence of nerve root compression (Tr. 13). In light of the foregoing, the undersigned agrees that the ALJ properly concluded that Plaintiff's impairments did not meet or medically equal listing 1.04A. (Tr. 14). *Elam ex rel.* Golay v. Commissioner of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003).

Additionally, the ALJ's decision clearly indicates that he properly considered Plaintiff's obesity in his step-three analysis. SSR 02–1 p provides that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02–1 p. Adjudicators must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." Security Ruling 02–1 p does not mandate any "particular mode of analysis." To the contrary, historically the Sixth Circuit has required only minimal articulation at Step 3 of the sequential analysis, *see Price v. Heckler,* 767 F.2d 281, 284 (6th Cir.1985); *Bledsoe v. Barnhart,* 165 Fed. App'x 408, 412 (6th Cir.2006) (stating that "[i]t is a mischaracterization to suggest that Social Security Ruling 02–01p offers any particular procedural mode of analysis for obese disability claimants."). So long as the ALJ's decision as a whole articulates the basis for his or her conclusion, the decision may be affirmed. *See Hurst v. Sec'y of Health & Human Servs.,* 753 F.2d 517, 519 (6th Cir.1985).

Here, the ALJ's step-two and step-three findings discuss Plaintiff's obesity and its impact, if any, on Plaintiff's functional limitations. The ALJ determined that the record

evidence establishes that Plaintiff's obesity significantly impacts Plaintiff's functioning. As such the ALJ determined that Plaintiff's obesity was a severe impairment. (Tr. 13). With respect to the Listings, the ALJ discussed the effect of Plaintiff's obesity with respect to Listings 1.00B or 101.00B. In this regard, the ALJ determined that Plaintiff's obesity does not result in an inability to ambulate effectively, as required by those Listings.

For these reasons, Plaintiff's first assignment of error should be overruled in this regard.

*2. Step-two findings*

Plaintiff's next assignment of error asserts that the ALJ committed reversible error because she did not find cubital tunnel syndrome to be a severe impairment or consider what effect the impairment would have on his ability to work.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 404.1521(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.,* 736 F.2d 352, 357 (6th Cir.1984). An impairment will be considered nonsevere only if it is a "slight

abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,* 773 F.2d 85, 90 (6th Cir.1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)). The severity requirement is a "de minimus hurdle" in the sequential evaluation process. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988). *See also Rogers v. Commissioner,* 486 F.3d 234, 243 n. 2 (6th Cir.2007).

Here, at step-two of the sequential evaluation, the ALJ found Plaintiff's lumbar degenerative disc disease and residual effects of lumbar fusion; obesity; carpal tunnel syndrome; depression; and anxiety to be severe impairments. (Tr. 12). Plaintiff contends that the ALJ should have determined that Plaintiff's cubital tunnel syndrome was a severe impairment and also should have considered the cumulative effects of this impairment when determining his upper extremity limitations. In this regard, Plaintiff cites to EMG test results from 2010 that showed mild bilateral ulnar neuropathy at the elbows (cubital tunnel syndrome). (Tr. 961-963). Plaintiff also notes that a January 2012 EMG report showed moderate bilateral carpal tunnel syndrome with mild borderline left ulnar neuropathies at the elbow.

The ALJ however, acknowledged that Plaintiff's January 2012 EMG report showed moderate bilateral carpal tunnel syndrome with mild borderline left ulnar neuropathies at the elbow; however, she explained that the report was dated over a year after Plaintiff's date last insured. (Tr. 17-18). Further, the mere existence of impairment does not establish that Plaintiff was significantly limited from performing basic work activities for a continuous period of time. *Despins v. Commissioner of Social Security,*

257 F. App'x 923, 930 (6th Cir.2007) (citing *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir.1988)). When the record does not contain any reports, doctor statement's or other information regarding a plaintiff's physical limitations or the intensity, frequency, and duration of pain associated with a condition, the Sixth Circuit has regularly found substantial evidence to support a finding of no severe impairment. *See Long v. Apfel,* 1 F. App'x 326, 331 (6th Cir.2001) (citing *Higgs,* 880 F.2d at 860; *Maloney v. Apfel,* No. 99–3081, 2000 WL 420700 (6th Cir. Apr.14, 2000); *Foster v. Sec'y of Health & Human Servs.,* No. 88–1644, 1990 WL 41835 (6th Cir. Apr.11, 1990)).

More importantly, even if the ALJ erred in not finding Plaintiff's cubital tunnel syndrome to be a "severe" limitation, such error was harmless. This is because the regulations require that if one "severe" impairment exists, all impairments—severe or otherwise—must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523, 416.923, 404.1545(e). Thus, where an ALJ errs in finding a particular impairment "non-severe" in step two of the analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC. *Meadows v. Comm'r of Soc. Sec.,* No. 1:07cv1010, 2008 WL 4911243, at *13 (S.D.Ohio 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987)). Here, the ALJ's decision indicates that she properly considered and addressed all of Plaintiff's severe and non-severe impairments in determining his RFC. (Tr. 15-22). Accordingly, the undersigned finds that substantial evidence supports the ALJ's decision in this regard.

## III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DERRICK ALDRIDGE,

Plaintiff,

v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 1:14-cv-239

Beckwith, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).